UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| United States of America, | Case No. 18-cr-0114 (WMW/HB) |
|---|---|
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION AND AFFIRMING MAGISTRATE JUDGE'S ORDER** |
| Mario Martell Spencer (1) and Ahmed Osman Farah (2), | |
| Defendants. | |

---

This matter is before the Court on the November 30, 2018 Report and Recommendation (R&R) of United States Magistrate Judge Hildy Bowbeer. (Dkt. 79.) The R&R recommends denying Defendant Mario Martell Spencer's motion to suppress evidence and granting in part and denying in part Defendant Ahmed Osman Farah's motion to suppress statements. Defendants filed timely objections, and Plaintiff United States of America responded. Farah also appeals the magistrate judge's December 21, 2018 Order denying his motion to modify his detention. (Dkt. 85.) For the reasons addressed below, Defendants' objections are overruled, the R&R is adopted, and the December 21, 2018 Order is affirmed.

## BACKGROUND[1]

Two individuals brandishing firearms robbed a convenience store in Minneapolis on March 23, 2018. After hearing a description of the perpetrators and the getaway vehicle

---

[1] The relevant factual and procedural background is addressed in detail in the R&R and need not be repeated at length.

over the dispatch radio, police encountered a vehicle that matched the description. The officers attempted to initiate a traffic stop. But the vehicle fled and led police on a chase before crashing into a garage. When officers approached the crashed vehicle and observed that it was empty, they began searching the area for the suspects. Spencer and Farah were subsequently apprehended separately on foot. Farah made several brief statements to officers as he was arrested and placed in the back of a squad car. After the police transported Spencer and Farah to City Hall, two officers interviewed Spencer. When asked whether he wanted to provide a statement, Spencer replied "I don't got nothing to say" and "[t]here's nothing to explain." After Spencer made these statements, an officer gave Spencer a *Miranda* warning, and the interrogation continued.

A grand jury returned an indictment charging Spencer and Farah with interference with commerce by robbery; using, carrying, and brandishing a firearm during and in relation to a crime of violence; and unlawful possession of a firearm by a felon. Both Spencer and Farah were ordered detained on June 4, 2018. Farah subsequently sought to modify the terms of the detention order to permit his release with electronic monitoring or to a halfway house. Following a hearing, the magistrate judge denied the motion, concluding that no conditions of release could reasonably assure the safety of the community and Farah's appearance at future court proceedings.

Spencer moves to suppress evidence that police seized from him during and after his arrest and statements that he made to police after his arrest. Farah moves to suppress his post-arrest statements to police. The magistrate judge issued the pending R&R following an August 29, 2018 evidentiary hearing. The R&R recommends denying

2

Spencer's motion to suppress evidence in its entirety. The R&R recommends granting Farah's motion to suppress as to one of Farah's statements to police and denying the motion in all other respects. Defendants filed timely objections to the R&R, and the United States responded.

On November 19, 2018, Farah again moved to modify the terms of the detention order, seeking release to his sister's residence or a halfway house. Farah reasserted his arguments regarding his mental health conditions, his history of appearing for court proceedings, and his family support. He also argued that he was assaulted while in custody and that one of his family members is suffering from a serious medical condition. In a December 21, 2018 Order, the magistrate judge concluded that none of these arguments establishes that there are conditions that would reasonably assure either the safety of the community or Farah's appearance at future court proceedings. Farah appeals the December 21, 2018 Order.

## ANALYSIS

### I. The November 30, 2018 R&R

Spencer objects to the R&R's determination that his statements to police should not be suppressed because he did not unequivocally invoke his right to remain silent. Farah objects to the R&R's determination that several of the statements he made to police during his arrest should not be suppressed because those statements either were made in response to routine questions or were voluntary statements not made in response to interrogation. This Court reviews each objected-to determination de novo. *See* 28 U.S.C. § 636(b)(1);

Fed. R. Crim. P. 59; LR 72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).

### A. Spencer's Motion to Suppress

Spencer objects to the R&R's determination that he did not unequivocally invoke his right to remain silent when officers began to interrogate him at City Hall following his arrest. According to Spencer, the officers were required to end the interrogation when he told them "I don't got nothing to say" and "[t]here's nothing to explain." The United States counters, and the R&R concludes, that these statements from Spencer were not unequivocal invocations of his right to remain silent.

The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The prosecution cannot use statements "stemming from custodial interrogation of the defendant unless [the prosecution] demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). During a custodial interrogation, if an individual "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74. A suspect must make "a clear, consistent expression of a desire to remain silent" in order to "adequately invoke this right" and end questioning. *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016) (internal quotation marks omitted). "Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent" are insufficient. *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007). An individual's evasiveness or

4

reluctance to talk generally also is insufficient to invoke one's right to remain silent. *See id.* Whether a suspect invoked the right to remain silent is a factual determination for the district court. *Id.*

Spencer's statements "I don't got nothing to say" and "[t]here's nothing to explain" could be interpreted as an invocation of Spencer's right to remain silent. But the R&R determines, and this Court agrees, that another equally reasonable interpretation of Spencer's statements is that he had no information to provide the officers, or that he knew nothing that the officers did not already know. *Cf. United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995) (concluding that defendant did not unambiguously invoke right to remain silent when he told officers "you guys have all the evidence against me. I don't need to make any statement. I don't need to say anything."). Notably, Spencer's statements do not convey a *desire* not to talk. *See Adams*, 820 F.3d at 323 (explaining that a suspect must express "a *desire* to remain silent" (emphasis added)). Indeed, Spencer's first clear expression of a desire, which occurred immediately after his statement that there was "nothing to explain," is that of a desire *to talk*.[2] And after the officers subsequently informed Spencer of his Fifth Amendment rights, Spencer almost immediately agreed to continue speaking with the officers. When viewed in context, Spencer's initial statements to the interrogating officers did not unambiguously invoke his right to remain silent. For this reason, Spencer's objections are overruled.

---

[2] When asked "if you had nothing to do with it, I would think you'd want to explain that, right, wouldn't you?" Spencer responded: "Yeah."

5

Spencer does not object to any other aspect of the R&R as to his motion to suppress. When reviewing dispositive recommendations to which no objection has been made, this Court determines whether the recommendations are clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *accord Grinder*, 73 F.3d at 795. Having reviewed those portions of the R&R to which Spencer has not objected, the Court concludes that the R&R is neither clearly erroneous nor contrary to law.

The November 30, 2018 R&R is adopted with respect to Spencer's motion to suppress.

### B. Farah's Motion to Suppress

Farah objects to the R&R's determination that several of the statements he made to police during his arrest, before he received a *Miranda* warning, should not be suppressed because those statements were not made in response to interrogation. The R&R did not consider three factors that are unique to this case, Farah argues, namely, that the arresting officer used physical force against Farah during his arrest, English is not Farah's first language, and Farah was experiencing symptoms and behaving in a manner indicative of severe mental illness at the time of his arrest.

*Miranda* warnings must be given when a defendant is subjected to an interrogation in police custody. *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010). It is undisputed that Farah was in custody when he made the statements at issue here. The only dispute is whether Farah was subject to interrogation when he made these statements. The Court addresses each set of statements in turn.

When an officer asked Farah for his name, Farah responded "Jesus Christ" and asked "can I get my wallet?" and "where's my wallet?" As the R&R correctly observes, a law enforcement officer's request for routine information, such as a suspect's name, "is not [an] interrogation under *Miranda*, even if the information turns out to be incriminating," unless the officer should reasonably know that the request seeks information "directly relevant to the substantive offense charged." *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010) (internal quotation marks omitted). The physical force used against Farah during his arrest, his proficiency with the English language, and his mental health condition have no bearing on whether the officers' requests for his name were, in fact, an interrogation under *Miranda*. Because the record demonstrates that Farah was not subject to interrogation when he made statements in response to questions about his name, the R&R correctly concludes that those statements should not be suppressed. For these reasons, Farah's objections as to these statements are overruled.

Next, in response to being handcuffed, Farah stated that he was "innocent" and that he "didn't do nothing, what's going on?" Farah also made spontaneous statements about the location of his hat and wallet during his arrest. A defendant's voluntary statements "are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478. Under *Miranda*, to qualify as a custodial interrogation, the circumstances "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). But nothing in the record suggests that Farah made these statements in response to a question posed by the officers or in response to any degree of compulsion beyond that which is inherent in his arrest. In fact, the officers repeatedly told Farah to

7

*stop* talking. Although the arresting officers used physical force against Farah during his arrest, nothing in the record supports a determination that this use of force specifically prompted the statements Farah seeks to suppress. Nor has Farah demonstrated either a factual or a legal basis to conclude that his proficiency with the English language or his mental health condition has any bearing on whether he was subject to police interrogation when he made these statements. Because the record demonstrates that Farah made these voluntary, spontaneous statements when he was not subject to interrogation, the R&R correctly concludes that the statements should not be suppressed. Farah's objections as to these statements are overruled.

Farah objects to no other aspect of the R&R's analysis of his motion to suppress. When reviewing dispositive recommendations to which no objection has been made, this Court determines whether such recommendations are clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *accord Grinder*, 73 F.3d at 795. After careful review of those portions of the R&R to which Farah has not objected, the Court concludes that the R&R is neither clearly erroneous nor contrary to law.

Accordingly, the November 30, 2018 R&R is adopted with respect to Farah's motion to suppress.

**II.  The December 21, 2018 Order**

Farah also appeals the magistrate judge's December 21, 2018 Order, which denied Farah's motion to modify the terms of his detention. A district court's review of a magistrate judge's order on a nondispositive matter is "extremely deferential." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). Reversal is

warranted only if the ruling is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); LR 72.2(a). A magistrate judge's ruling is clearly erroneous when, although there is evidence to support the ruling, the reviewing court, after examining the entire record, "is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted). A magistrate judge's ruling is contrary to law when it either fails to apply or misapplies pertinent statutes, case law or rules of procedure. *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1043 (D. Minn. 2010).

As addressed in detail in the December 21, 2018 Order and the bond report, Farah has a history of arrests and convictions involving violent conduct, fleeing authorities, resisting arrest, escaping from custody, and failing to appear for court proceedings. Farah also has repeatedly violated the terms of his supervised release in the past. Farah does not dispute any of these facts, nor is there anything in the record that casts doubt on them. Farah's sole argument on appeal is that the magistrate judge did not make specific findings that Farah "made every court appearance while out on bond" during the two months that this matter was pending in state court and that he "was not a threat to public safety" during that time. But Farah's attendance at several recent state court appearances and compliance with his conditions of release for two months, while commendable, do not demonstrate that the magistrate judge's decision is clearly erroneous or contrary to law. Indeed, the record in this case, which includes Farah's substantial history of violent and evasive conduct, clearly supports the magistrate judge's conclusion that there are no conditions that would
9

reasonably assure either the safety of the community or Farah's appearance at future court proceedings.

Accordingly, the December 21, 2018 Order is affirmed.

**ORDER**

Based on the R&R, foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Mario Martell Spencer's objections to the November 30, 2018 R&R, (Dkt. 82), are **OVERRULED**.

2. Defendant Ahmed Osman Farah's objections to the November 30, 2018 R&R, (Dkt. 81) are **OVERRULED**.

3. The November 30, 2018 R&R, (Dkt. 79), is **ADOPTED**.

4. Defendant Mario Martell Spencer's motion to suppress evidence, (Dkt. 45), is **DENIED**.

5. Defendant Ahmed Osman Farah's motion to suppress statements, (Dkt. 37), is **GRANTED IN PART AND DENIED IN PART** as addressed in the November 30, 2018 R&R.

6. The December 21, 2018 Order, (Dkt. 85), is **AFFIRMED**.

Dated: February 11, 2019                    s/Wilhelmina M. Wright
                                            Wilhelmina M. Wright
                                            United States District Judge